People agt. Tweed.

## SUPREME COURT.

### No. 3.

The People of the State of New York agt. Wm. M. Tweed—*Cause No. 2, commonly called " The one million case."*

*Decision denying challenge to the array of a struck jury.*

A challenge to the array of a struck jury cannot be sustained, on the ground,

*First.* That the various lists of jurors returned to the clerk's office of the county were imperfect, because the commissioner of jurors had not, when this jury was selected, made lists of jurors whom he had adjudged competent and liable to serve, as he was required to do by chapter 495, of the laws of 1847.

*Second.* Because the elisors have placed upon the list of names sundry individuals who had been stricken, some by the plaintiff and others by the defendant, from the list made by them in the first cause.

*Third.* Because among the twenty-four names is one John H. Caswell, who, on the 29th day of October, 1875, was exempted by the commissioner of jurors from jury duty.

This act of the commissioner, however, was subsequent to the making and filing of the list of jurors in the clerk's office, upon which he was returned as, and adjudged to be liable to serve as, a juror ; and the name was on the list of jurors from which the selection was to be made.

*Fourth.* Because the name of William P. Douglass, whose name is also on the panel returned, has a domicile in the county of Queens, votes there, and has done jury duty there.

The name of Mr. Douglass was upon the list returned to the clerk's office, and was taken therefrom in obedience to the mandate of the struck jury act.   Even if he had a right to be excused when called as a juror, this would not render the whole panel a nullity.

*Fifth.* Because the list of jurors selected to try this cause has, and the original one of forty-eight names had, one written Julius W. Catlin, whereas the name upon the general jury list is correctly written Julius Catlin, Jr.

There is but one Catlin, whose christian name is Julius; and the law is

well settled that there is only one christian name recognized, and the giving wrongly, or the failure to give a second, is no error.

*New York Circuit, January* 12, 1876.

CHALLENGE to the array of the struck jury.

*D. D. Field & Field & Deyo,* for challenge and defendant.

*James C. Carter & Wheeler H. Peckam,* for plaintiffs and opposed.

WESTBROOK, *J.* — The various objections which have been stated in support of the challenge presented by the counsel of the defendant will be considered in the order of their presentation.

First. It is objected that the various lists of jurors returned to the clerk's office of the county were imperfect, because the commissioner of jurors had not, when this jury was selected, made lists of jurors whom he had adjudged competent and liable to serve, as he was required to do by chapter 495 of the Laws of 1847. This ground of challenge was fully examined by me in the attempt to obtain a jury for the trial of the former action, and was then found to be insufficient. To the opinion then pronounced reference is made for the reasons which induced me to hold it invalid. Subsequent reflection has only confirmed the conclusions then reached, that the act providing for a struck jury requires the selection of forty-eight names from these lists, and when that has been done the law is complied with; that the laws providing for the selection and return to the clerk's office of the names of persons qualified to serve as jurors, have been repeatedly held (*see, among other cases, People* agt. *Friery,* 2 *Abbott's Court of Appeals Cases,* 227; *People* agt. *Ransom,* 7 *Wendell,* 424), were directory and not mandatory; and that if such laws require a perfect list of jurors to be made and returned to the clerk's office, they would then defeat all trials, as such a list, in the very nature of things, is impossible.

---

People agt. Tweed.

---

Second. It is urged that the panel should be quashed because the elisors have placed upon the list of names sundry individuals who had been stricken, some by the plaintiff and others by the defendant, from the list made by them in the first cause. To the elisors was committed (2 *Edmonds' Statutes, p.* 435, *sec.* 48), the right to judge. They are required to select from the general jury lists, filed in the clerk's office, such names as they "shall deem most indifferent between the parties, and best qualified to try such cause." The right of selection being confided to them, and the concession being made, as it is, that these gentlemen were honest in its exercise, I know of no mode, so long as the law does not forbid the act, by which the whole panel can be set aside for a mistake of judgment in regard to several of the individuals selected. A challenge to the array can only be maintained on the ground of partiality or bias in the officers choosing them; or for such a departure from the letter of the statute as will nullify the whole choice. If men who ought not to sit as jurors in the cause are selected, the objection to each must be made when called; and errors of judgment, if there be such, may then be corrected. It may not be improper further to observe that a juror may be incompetent to try one issue between parties, and yet perfectly competent to try another; and that a mere objection to an individual in one case, from serving as a juror, is not necessarily one to the same person when called to act as a juror in another action between the same parties, for the issues may be radically different, and the personal dislike on one day may vanish when some days elapse between the selection, as they have, in fact, intervened in the present instance.

Third. It is claimed that the whole jury should be discharged, because among the twenty-four names is one — John H. Caswell — who, on the twenty-ninth day of October, 1875, was exempted by the commissioner of jurors from jury duty. This act of the commissioner, however, was subsequent to the making and filing of the list of jurors in the

clerk's office, upon which he was returned as, and adjudged to be liable to serve as, a juror. As the name was upon the list of jurors from which the selection was to be made, I do not see how this objection can prevail. The true construction of section 48 ( 2 *Edmonds' Statutes, page* 435 ), does not require, in my judgment, the list of jurors who are then liable to serve to be accurate, for if it did, it being hardly possible to suppose that among over 6,000 competent names to-day they would all be competent to-morrow, or next week, there would never be a struck jury. The section, it seems to me, simply means that the selection of the forty-eight names shall be from among those whom " the original list of the jurors returned to him " shall show "are then liable to serve." If it means any thing more, the law is impossible to execute, and no construction accomplishing such a result should prevail, when another, capable of being fairly made, will give to it efficacy and life.

Fourth. The facts that William P. Douglass, whose name is also upon the panel returned, has a domicile in the county of Queens, votes there, and has done jury duty there, are urged as showing him to be not liable to serve as a juror in this county. The name of Mr. Douglass was upon the list returned to the clerk's office, and as it was taken therefrom in obedience to the mandate of the struck jury act, this objection cannot set aside the entire panel. It may be ground of objection to him when called, or an excuse to be presented by himself, but his right to be excused cannot render the entire selection a nullity. But there is another answer to this objection. An individual may have two residences, though he can have but a single domicile. Queens county is the domicile of Mr. Douglass, and he resides there, but he also resides in the city of New York, and as he expressly swears that " for the greater p.        between the first day of October and thirtieth day of ━ ━━ thereafter " he has, for several years, resided in the city of New York,

People agt. Tweed.

by the express terms of section 4 of chapter 539 of the Laws of 1870, he becomes liable to serve as a juror here.

Fifth. The list of jurors selected to try this cause has, and the original one of forty-eight names had, one written Julius W. Catlin, whereas the name upon the general jury list is correctly written Julius Catlin, Jr., and this discrepancy in the name is urged as fatal to the panel. It is true that, upon the former challenge, when it appeared that there were two individuals bearing the name of Southwick, one of them was truly called George W. and the other John C. Southwick, I held that the written name was the only evidence by which the person selected could be known, and to that decision I adhere; but there is only one Catlin, whose christian name is Julius, and I am asked to hold that, because he was erroneously given a middle letter ( W.) when he had none, and the description of " Jr." was omitted, that the individual was not properly designated. It will also be remembered that there is no claim now made, as there was in the former case, that the party was in any wise misled. He does not urge that he did not know the man as well by the name as written as he would have known him if it had been written with the " W." omitted and the " Jr." added. As the law is well settled, in cases so numerous as to make their citation unnecessary, that there is only one christian name recognized, and the giving wrongly, or the failure to give a second, is no error ; and that the word " junior " is no part of a name, and its addition or absence no misnomer, I do not see that I can hold that any error has been committed. If there were two persons bearing the name of Catlin, one known as Julius Catlin, Jr., and the other as Julius W. Catlin, and the party claimed he had been misled, the case might be different. As there is only one Julius · Catlin, and he has been summoned and attends, and as the parties knew him when the right of exclusion was exercised, despite the addition to the name of the " W." and the omission of the " junior," I fail to see how this point can prevail.

People agt. Tweed.

I have endeavored to give the questions raised, and which counsel had both a moral and legal right to make, my best consideration, and the views expressed are the results of my best judgment. The challenge to the array of jurors is, for the reasons given, overruled.